EATON, CRANE AND PIKE COMPANY *vs.* COMMONWEALTH.
UNITED STATES ENVELOPE COMPANY *vs.* SAME.

Suffolk.  November 15, 16, 1920. — March 3, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Constitutional Law*, Due process of law, Taxation, Interstate commerce.  *Corporation*, Taxation, Foreign.  *Tax*, Excise.

St. 1918, cc. 253, 255, as revived and re-enacted by St. 1919, c. 342, impose an additional, special and temporary excise upon the corporate franchise in the case of domestic corporations and upon the privilege of conducting intrastate business within Massachusetts in the case of foreign corporations, and do not impose a property or strict income tax.

The above mentioned statutes were enacted pursuant to the power granted by art. 4, c. 1, § 1 of the Constitution to "impose and levy reasonable duties and excises" and not to that conferred by art. 44 of the amendments, to impose a tax on income.

St. 1918, cc. 253, 255, as revived and re-enacted by St. 1919, c. 342, do not contravene any provision of the Constitution of this Commonwealth.

The excise authorized by the above mentioned statutes is not violative of the Constitution of the United States.

St. 1919, c. 342, § 9, did not repeal St. 1918, c. 253, § 3, but supplied an omission therein by making applicable to the determination of the income of a foreign corporation from business carried on outside this State which is to be apportioned to this Commonwealth, the rule established by St. 1918, c. 255, § 3, with reference to domestic corporations carrying on business outside this State.

St. 1919, c. 342, § 9, did not alter the requirement of St. 1918, c. 253, § 3, that before the portion of the total net income by which the excise payable to this Commonwealth by a foreign corporation is to be measured can be ascertained there are to be ascertained and excluded, (1) income from business carried on outside this Commonwealth, (2) income from property owned outside this jurisdiction and (3) income from interstate or foreign commerce.

TWO PETITIONS, filed in the Supreme Judicial Court on December 24, 1919, one of which was afterwards amended, by two corporations organized under the laws of the State of Maine, each maintaining a factory or factories as well as warehouses and sales offices in Massachusetts and each having real and personal property in other States which it used in connection with the manufacture and sale of stationery, praying that the war bonus taxes, so called, levied under St. 1919, c. 342, which revived and re-enacted St. 1918, cc. 253, 255, be "abated, in whole or part, and

that the Treasurer and Receiver General of the Commonwealth may be, by the decree of this court, ordered to repay to the petitioner the amount of said tax, or so much thereof as shall have been found to have been so illegally exacted, with interests and costs."

Both cases came on to be heard before *Pierce*, J., who, at the request of the parties, reserved each case on the pleadings and agreed statement of facts, material portions of which are stated in the opinion, for the determination of the full court.

St. 1918, c. 253, §§ 1, 3 and 4, provided:

"Section 1. Every foreign corporation, as defined in section thirty-nine of Part III of chapter four hundred and ninety of the acts of nineteen hundred and nine, shall pay a tax to the Commonwealth computed upon the net income for its fiscal or calendar year next preceding, as hereinafter provided, upon which income such corporation is required to pay a tax to the United States. Each corporation subject to the tax imposed by this act shall render to the Tax Commissioner, under oath or affirmation of its treasurer or assistant treasurer, on or before the first day of July in the year nineteen hundred and eighteen, unless the fiscal year of the corporation for which it made return to the collector of internal revenue ended between the thirtieth day of April and the first day of July, both inclusive, in which case the said report shall be rendered by the corporation within sixty days after the date of the closing of its said fiscal year, a true copy of the last return made to the collector of internal revenue, of the annual net income arising or accruing from all sources in its fiscal or calendar year next preceding, stating the name and situation of the principal place of business of the corporation; the kind of business transacted, and a list of all subsidiary companies, if any, with the situation of the principal place of business of each; the gross amount of its income during the said year from all sources, and the amount of its ordinary necessary expenses paid out of earnings in the maintenance and operation of the business and properties of the corporation; such other information as may be requested by the United States treasury department for the purpose of ascertaining the total amount of net income taxable under the United States income tax act; the net income of the corporation after making the deductions authorized; the amount of taxes paid

upon its income to the internal revenue department for the year next preceding the one for which such return is made."

"Section 3. If any such corporation carries on business outside of this Commonwealth, or owns property beyond its jurisdiction, or is to any extent engaged in interstate or foreign commerce, that portion only of its net income which is not derived from the said sources shall be apportioned to this Commonwealth and taxed hereunder. Each corporation, in connection with the return required by section one of this act, shall state in such form as the Tax Commissioner shall prescribe what portion or amount of its annual net income is apportionable to this Commonwealth, as provided in this section. A tax is hereby laid on every such corporation of one per cent of the said income to be assessed in the manner hereinafter provided.

"Section 4. Sections four to nine, inclusive, of the general act of the current year, entitled 'An Act imposing an additional tax upon the net incomes of domestic corporations,' shall apply to the taxes imposed by this act and to the enforcement of its provisions."

St. 1918, c. 255, §§ 3 and 4, were as follows:

"Section 3. If such corporation carries on business outside of this State, a portion of the net income on which the tax is imposed by the United States shall be apportioned to this State as follows: In case of a company deriving profits principally from the ownership, sale, or rental of real estate, and in case of a corporation deriving profits principally from the sale or use of tangible personal property, such proportion as the fair cash value of its real estate and tangible personal property in this State on the date of the close of the fiscal year of such corporation in the year next preceding is to the fair cash value of its entire real estate and tangible personal property then owned by it, with no deduction on account of any incumbrance thereon; in case of a corporation deriving profits principally from the holding or sale of intangible property, such proportion as its gross receipts in this State for the year ending on the date of the close of its fiscal year next preceding is to its gross receipts for such year within and without the State. In case neither of the above methods are applicable, the tax commissioner shall determine, in such manner as he deems equitable, the proportion of the net income received from business carried on within this Commonwealth.

"Section 4. The tax commissioner, on or before the first·day of September in the current year, shall make a list of companies subject to the tax computed upon their net incomes, with the amount apportioned to this Commonwealth, as provided in section three, and a tax shall be levied on each of said corporations of one per centum of such income, and the tax commissioner shall enter the amount of such tax against the name of each said corporation. . . ."

St. 1919, c. 342, §§ 1 and 9, provided:

"Section 1. For the purpose of imposing an additional tax upon the net incomes of foreign and domestic business corporations, chapters two hundred and fifty-three and two hundred and fifty-five of the General Acts of nineteen hundred and eighteen are hereby revived and re-enacted and made applicable to the net income of said corporations for the period covered by their return of income to the federal government due next prior to the passage of this act, provided, that no credit shall be given for any federal war or excess profits or other income taxes, and that returns of income taxable under this section shall be filed not later than August fifteenth of the current year."

"Section 9. The provisions of section three of said chapter two hundred and fifty-five, for the apportionment of net income to this Commonwealth, shall apply to corporations taxable under the provisions of chapter two hundred and fifty-three of the General Acts of nineteen hundred and eighteen, as revived and extended by sections one and two of this act."

*H. M. Davis & F. Rackemann,* for the petitioners.

*M. C. Teall,* Assistant Attorney General, for the Commonwealth.

RUGG, C. J. These are petitions for the abatement of the war bonus taxes, so called, levied under St. 1919, c. 342, whereby St. 1918, cc. 253 and 255, each operative according to its terms for one year only, were revived and extended for a further period. By the words of c. 253 and c. 255 certain foreign and domestic corporations were required to pay "a tax . . . computed upon . . . net income."

Question is raised as to the nature of the taxes thus imposed. The language of these several acts is not as plain as might be desired in designating whether a property or an excise tax is intended. Nevertheless, construing the acts in the light of the system

of corporate taxation established for many years in this Commonwealth, it must be deemed that an excise and not a property tax is thereby established. The revenue derived by the State from both domestic and foreign corporations has for many years been chiefly by the exaction of excise taxes. *Farr Alpaca Co.* v. *Commonwealth*, 212 Mass. 156. *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass. 35. A departure by the Legislature from that tried system of taxation will not be presumed in the absence of explicit words expressive of such purpose. Several cases already have been before us involving these acts. It never hitherto has been suggested that the taxes were property taxes rather than excises. *American Printing Co.* v. *Commonwealth*, 231 Mass. 237. *H. P. Hood & Sons* v. *Commonwealth*, 235 Mass. 572. If the taxes here assailed were found to be income taxes rather than excises, difficult questions would arise as to their conformity to the requirements of art. 44 of the Amendments to the Constitution, to the effect that the rate of taxation upon incomes derived from the same class of property must be uniform. The rate named in these acts is different from that in St. 1916, c. 269, §§ 2, 5, which is confessedly an act levying taxes upon incomes. Every rational intendment is made in favor of the validity of an act of the General Court and no statute is denied enforcement unless its conflict with the fundamental law admits of no rational doubt. *Perkins* v. *Westwood*, 226 Mass. 268. The tax is not named in these acts an excise, as it is in St. 1909, c. 490, Part III, § 56, imposing the general excise tax upon foreign corporations doing a domestic business in this Commonwealth. The same nomenclature is used in these acts as is found in St. 1918, c. 252, which imposed an additional tax upon incomes of individuals and partnerships. That tax is a property and not an excise tax. *Maguire* v. *Tax Commissioner*, 230 Mass. 503, 512. *Opinion of the Justices*, 220 Mass. 613, 623–627, confirmed in *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 532. The purpose of the Legislature must be gathered not only from the words used but the powers possessed by it. It must be presumed to have intended to act within the limits imposed on it by the Constitution. "Tax" in some connections is a word of comprehensive meaning and may include excises as well as a pecuniary burden laid directly on property. The Legislature has sometimes designated an excise as a

tax and nothing more. For example, the franchise tax imposed on domestic corporations is an excise. Yet it is termed simply a "tax" in St. 1909, c. 490, Part III, § 43. Many of the revenue exactions made by the Commonwealth from corporations, which have been upheld as excises, were named in the statutes a tax and not an excise. See, for example, St. 1862, c. 224; *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428; St. 1864, c. 208, §§ 1, 5; *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298; St. 1865, c. 283, § 8; *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148. The discussions in those decisions are conclusive of the issue here raised. The word used is not decisive, when a term of sufficiently broad import is employed to cover the substance of the thing which is within the authority of the Legislature. The real character of the monetary exaction is the determining factor. There was authority in the General Court to levy an additional excise of such nature as not to exceed constitutional bounds. The net income of the foreign corporation and the rate constitute, as defined in these acts, the measure by which to calculate the extent of the special additional excise levied upon the corporation in addition to those imposed by St. 1909, c. 490, Part III, § 56. It follows that the effect of these statutes is to impose an additional, special and temporary excise upon the corporate franchise in the case of domestic corporations and upon the privilege of conducting intrastate business within our borders in the case of foreign corporations, and not to impose a property or strict income tax. These statutes were enacted pursuant to the power granted by c. 1, § 1, art. 4 of the Constitution, to "impose and levy reasonable duties and excises" and not to that conferred by art. 44 of the Amendments, to impose a tax on incomes. They do not contravene any provision of the Constitution of this Commonwealth.

The excise thus authorized is not violative of the Constitution of the United States. *H. P. Hood & Sons* v. *Commonwealth,* 235 Mass. 572. The tax here attacked falls far short of those upheld in *Shaffer* v. *Carter,* 252 U. S. 37, *Travis* v. *Yale & Towne Manuf. Co.* 252 U. S. 60, *Maxwell* v. *Bugbee,* 250 U. S. 525, 539, *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, and is well within the authority of those decisions. Since this is an excise and not a property tax, there is nothing in *Royster Guan  Co.* v.

*Virginia*, 253 U. S. 412, at variance with the conclusion here reached.

Both petitioners are corporations organized under the laws of Maine. Each maintains a factory or factories, warehouses and sales offices in this Commonwealth, has property and conducts business in other States, and engages in interstate commerce. It was provided by St. 1918, c. 253 (which relates wholly to foreign corporations), in § 1 that every foreign corporation shall pay "a tax . . . computed upon the net income for its fiscal or calendar year next preceding . . . upon which income such corporation is required to pay a tax to the United States." By § 3 of the act it was provided that "If any such corporation carries on business outside of this Commonwealth, or owns property beyond its jurisdiction, or is to any extent engaged in interstate or foreign commerce, that portion only of its net income which is not derived from the said sources shall be apportioned to this Commonwealth and taxed hereunder." The tax is at the rate of one per cent on such net income. By St. 1918, c. 255, there was imposed a like tax upon the net income of domestic corporations. In § 3 of the latter act is found the rule for ascertaining the portion of the net income of such corporations as carry on business outside of this Commonwealth upon which the tax is to be laid. Both those chapters were operative for one year only. By St. 1919, c. 342, § 1, it was provided that both those chapters were "revived and re-enacted and made applicable to the net income of said corporations for the period covered by their return of income to the federal government due next prior to the passage of this act." In § 9 of c. 342 are found these words: "The provisions of section three of said chapter two hundred and fifty-five, for the apportionment of net income to this Commonwealth, shall apply to corporations taxable under the provisions of chapter two hundred and fifty-three of the General Acts of nineteen hundred and eighteen, as revived and extended by sections one and two of this act."

The tax commissioner in levying the excises on the petitioners proceeded upon the theory that this § 9 had the effect of establishing the same rule for foreign as for domestic corporations as to the apportionment to Massachusetts of the net income whereby the excise is to be levied. This is not the correct interpretation

of the terms of that section. The familiar principle is to be borne in mind that tax laws are to be strictly construed against the taxing power. If the right to tax is not plainly conferred by the statute, it is not to be extended by implication. Doubts are resolved in favor of the taxpayer. *Martin L. Hall Co.* v. *Commonwealth*, 215 Mass. 326. *Hill* v. *Treasurer & Receiver General*, 229 Mass. 474. *Gould* v. *Gould*, 245 U. S. 151. It is expressly provided by St. 1919, c. 342, in § 1 that St. 1918, c. 253, relative to the additional tax upon foreign corporations is "revived and re-enacted and made applicable to the net income" for the additional period. The whole of c. 253 is thus restored to life and not any particular part or parts to the exclusion of any other part or parts. Section 3 of that act is "revived and re-enacted" just as effectively and expressly as any other section or sentence. There is no provision in c. 342 to the effect that any part or parts of c. 253 are repealed or are to be disregarded or treated as ineffective. There is no clause in c. 342 that any act or acts or parts of acts inconsistent therewith are repealed or not revived and re-enacted. The law does not recognize repeals by implication unless the new legislation is inconsistent with the old. *Johnson* v. *Mayor of Quincy*, 198 Mass. 411. The indications from the terms of the two acts are that the Legislature intended both to stand as completely operative in their every part. They are to be construed as mutually harmonious and not as in conflict. It is a familiar canon of statutory interpretation that every part, clause and word of legislative enactments are to be given force and effect so far as is reasonably practicable. No part is to be brushed aside as immaterial or superfluous unless no other rational course is open. Analysis of St. 1918, c. 253, § 3, shows that the net income of foreign corporations derived from three different sources was to be ascertained and excluded before the portion of the total net income, by which the excise payable to this Commonwealth was to be measured, could be found. Those three sources were (1) income from business carried on outside this Commonwealth, (2) income from property owned outside this jurisdiction, and (3) income from interstate or foreign commerce. The provisions of St. 1919, c. 342, in § 9 are supplementary and not repugnant to those of c. 253, § 3. They require that, in determining the income of foreign corporations derived

from the first source, that is, the income from business carried on outside this State, which is to be apportioned to this Commonwealth, the rule established by St. 1918, c. 255, § 3, with reference to domestic corporations carrying on business outside this State, shall be followed. No rule for determining that part of the income of foreign corporations was established by the express terms of said, c. 253 as first enacted. That omission is supplied by said c. 342, § 9. The deductions to be made from the total net income of income derived from the remaining two sources, that is, from property owned outside the jurisdiction and from interstate and foreign commerce, are not affected thereby. They remain as theretofore. The income derived from all three sources still is to be deducted from the total net income before the portion of net income can be ascertained by which the excise tax is to be measured.

This construction receives some slight confirmation from St. 1920, c. 550, which imposed a further special excise for another year upon certain foreign and domestic corporations. By that act said c. 253, § 3, is made applicable to the excises thereby authorized, while § 3 of said c. 255 is not made applicable and a new provision is enacted in § 4 which in substance is like said c. 255, § 3, and which in terms is made applicable to all corporations, apparently including both foreign and domestic corporations, carrying on business outside the Commonwealth. It is more likely that a uniform policy in such a matter would have been followed by the Legislature than such a vacillating course as would be involved in adopting the construction urged in behalf of the Commonwealth.

The contention has not been made and could not successfully be made that the excise, thus to be computed and levied, is void under the principle declared in *Wallace* v. *Hines,* 253 U. S. 66. It plainly is constitutional within the scope of decisions collected in *Union Tank Line Co.* v. *Wright,* 249 U. S. 275, at page 282.

The cases are to be remanded to the county court for the ascertainment of the amount of abatement to which each petitioner is entitled under the principles here stated, and decree is to be entered by the single justice for each petitioner in accordance with the amount so found.

*So ordered.*