COMMISSIONER OF INSURANCE *v.* NATIONAL LIFE
INSURANCE CO. OF UNITED STATES
OF AMERICA.

1. STATUTES—CONSTRUCTION.

The language used by the legislature must be interpreted in the light of the purpose sought to be accomplished.

2. INSURANCE—FOREIGN COMPANIES—TAX ON GROSS PREMIUMS.

Statute imposing tax on gross premiums received by foreign insurance companies doing business in this State as a condition

precedent to continuance of license to do business herein *held,* tax on business for year in which premiums were collected and not for ensuing year but with right to continue doing business in this State contingent upon payment within time prescribed by statute (3 Comp. Laws 1929, § 12327).

3. SAME—FOREIGN COMPANIES—APPOINTMENT OF RECEIVER—TAX ON GROSS PREMIUMS.

When foreign insurance company went out of business and receiver was appointed, tax on gross premiums collected during year then current became due and payable and, by operation of law, a valid subsisting claim against assets *in custodia legis* (3 Comp. Laws 1929, § 12327).

4. RECEIVERS—FOREIGN INSURANCE COMPANY—JURISDICTION.

A receiver of foreign insurance company, under appointment in another State, has no extra-territorial jurisdiction.

5. INSURANCE—COURTS—JURISDICTION TO APPOINT ANCILLARY RECEIVER—COLLECTION OF TAXES.

Court of this State has power to appoint an ancillary receiver for assets of foreign insurance company within this State where the State has a claim for taxes (3 Comp. Laws 1929, § 12327).

6. RECEIVERS—FOREIGN INSURANCE COMPANY—ASSETS IMPOUNDED IN THIS STATE—TAXES.

Receiver of foreign insurance company who was appointed by court of another State and to whom ancillary receiver, appointed by court of this State, was directed to turn over assets impounded here impressed with lien for taxes and which assets were accepted by such foreign receiver subject to such lien *held,* bound to carry out conditions under which he obtained administration of such funds (3 Comp. Laws 1929, § 12327).

Appeal from Ingham; Carr (Leland W.), J. Submitted April 7, 1937. (Docket No. 13, Calendar No. 39,326.) Decided June 7, 1937. Rehearing denied September 1, 1937.

Bill by Charles C. Gauss, commissioner of insurance for the State of Michigan, against National Life Insurance Company of the United States of America, an Illinois corporation, for appointment of ancillary

receiver. Charles C. Gauss succeeded by John C. Ketcham. Claim of State of Michigan for amounts due for taxes filed. From decree allowing claim of State of Michigan and giving it preference, defendant Lucey, receiver of National Life Insurance Company of the United States of America, appeals. Affirmed.

*Raymond W. Starr,* Attorney General, *Edmund E. Shepherd* and *Joseph Zwerdling,* Assistants Attorney General, for the State of Michigan.

*Shields, Ballard, Jennings & Taber* and *Concannon, Dillon, Bostelman & Snook* (*R. F. Bostelman,* of counsel), for defendant receiver.

WIEST, J. The statute, 3 Comp. Laws 1929, § 12327, imposes a specific tax upon premiums on business permitted to be done in this State by a foreign insurance company and payable between the first day of January and of April for the preceding calendar year.

In April, 1933, the National Life Insurance Company, of Illinois, paid the State of Michigan such specific tax for the calendar year 1932, amounting to the sum of $18,403.49.

In liquidation and dissolution proceedings in the superior court of Cook county, Illinois, defendant Patrick J. Lucey was appointed principal receiver of the insurance company on October 17, 1933.

In November, 1933, under a bill in equity filed by the Michigan commissioner of insurance, the circuit court for the county of Ingham, in chancery, appointed an ancillary receiver of the assets of the National Life Insurance Company within the State of Michigan.

In March, 1934, the Illinois receiver intervened in the Ingham circuit court proceeding, and the court directed surrender to him of the assets of the corporation within this State, inclusive of $22,378.00 in cash, and discharged the local receiver but decreed that the funds so turned over should stand charged—"with the same lien or preference, if any, in favor of the State of Michigan, to secure the payment of its said claim, which would exist in case said sum were still in the hands of said ancillary receiver, and this court hereby retains jurisdiction of said intervening petitioner and of this cause to determine the validity and amount of said claim of the State of Michigan and the question of whether any lien or preference for the payment thereof exists, to all of which the said Patrick J. Lucey, as receiver of the National Life, now here in open court consents."

At the time of the decree the claim of the State was made for the tax in the amount of $12,295.64, on gross premiums, collected by the insurance company on its business within this State during the calendar year 1933, up to the time the proceedings were commenced in the Illinois court.

Such reserved matter came before the Ingham court and in August, 1936, the court decreed allowance of the claim of the State without interest from April 1, 1934, and ordered the Illinois receiver to pay the same within 60 days as a preferred claim and with priority out of the mentioned money turned over by the local receiver as above mentioned.

From this decree the Illinois receiver prosecutes review claiming:

1. The specific tax on the premiums is payable in advance at the beginning of the year for the privilege of doing business during the succeeding year:

2. That the tax had neither accrued nor become payable prior to the appointment of the Illinois receiver;

3. That the Illinois law governs rights and the State of Michigan cannot be given priority on its claim.

In behalf of the State it is claimed that the tax is imposed for the year during which the premiums were collected.

We quote the pertinent provisions of the statute:

"Taxation of Foreign Insurance Companies. Every foreign insurance company, of the classes herein enumerated, admitted to do and doing any insurance business in this State, shall, as a condition precedent to the privilege of doing business, pay to the treasurer of the State of Michigan, on the first day of January, of each year, or before the first day of April next thereafter, (subject to the retaliatory provisions herein before provided) a tax upon its said business written in this State under the authority of the commissioner of insurance hereof, for the year ending December thirty-one of the preceding year, computed as follows:

"First, Life insurance companies, a tax of two per centum on the gross premiums, excluding considerations for original annuities." 3 Comp. Laws 1929, § 12327.

"It is the contention of the defendant (Lucey, as receiver), that the premium tax imposed by the State of Michigan under 3 Comp. Laws 1929, § 12327, is in the nature of a license or franchise tax for the privilege of doing business, and is payable as a condition precedent to the privilege of transacting business in the State of Michigan for the ensuing year. Similar to substantially all license, privilege or franchise taxes, we contend that the tax is payable in advance, and that upon payment thereof a certificate of

authority or license to transact business for the ensuing year is issued. In determining the amount of the tax to be paid, premiums received during the preceding year are merely used as a basis for computing the amount to be paid for the license. Because that tax is payable in advance, the National Life had already paid for the privilege of doing business through March 31, 1934. Since the National Life ceased doing business on October 17, 1933, no further tax for the privilege of doing business subsequent to March 31, 1934, could accrue.''

We are not so impressed and adopt the view of the circuit judge:

''In accordance with well-established principles the language used by the legislature must be interpreted in the light of the purpose sought to be accomplished. Bearing such purpose in mind, may it fairly be said, as claimed by counsel for the Illinois receiver, that the legislature intended that the specific tax of two per centum on the premiums received on the insurance business during any calendar year, due to the State on the first of January and payable on or before the 31st of March following, is in reality a tax due and payable for the ensuing year. Or, as claimed on behalf of the State, was it intended that the tax should be regarded as for the year during which the premiums are collected, with the right to a renewal of a certificate of authority to continue in business contingent on payment within the prescribed time? If the objections are well founded the conclusion obviously follows that the legislature has, in effect, exempted from the specific tax foreign insurance companies during the first year of operation in Michigan. By way of illustration let us assume that a company organized under the laws of another State enters the State, for instance, on the second of January, 1937, continues in business here during that

year, and withdraws on the 31st of December. Under the theory advanced no specific tax would be due to the State. It does not seem to me that the statute is fairly susceptible of such construction. Obviously the practical result would be a discrimination against local insurance companies. It cannot be assumed that any such result was intended.''

The statute imposes the specific tax upon the gross premiums received by the insurance company each year and is levied at the close of the year, and its payment is compliance with the tax levy during such calendar year and not for the ensuing year.

We find no merit in the position assumed in behalf of the receiver.

Counsel for the receiver contend that the tax here in question was not due and payable until January 1, 1934, and, therefore, there was no provable debt due at the time of appointment of the receiver. When the insurance company went out of business under the liquidation proceeding the tax on the gross premiums to that time became due and payable, and by operation of law a valid subsisting claim against the assets *in custodia legis.*

The receiver, appointed in Illinois, had no extra-territorial jurisdiction. The Michigan court had power to appoint an ancillary receiver, there being property of the corporation in this State and the State having a claim for taxes.

Except by permission of the Michigan court the Illinois receiver could not take such property from the State and, to the end of protection of the claim of the State for the taxes, the court could impose conditions, inclusive of adjudication of priority of the claim to be paid out of the funds turned over to the Illinois receiver. The mentioned order directing the Michigan receiver to turn the impounded funds

over to the Illinois receiver impressed the funds with payment of the tax and the Illinois receiver accepted the funds in accord therewith.

Comity has been recognized without surrender of the preference right of the State and it is incumbent on the Illinois receiver to observe comity and carry out the conditions under which he obtained administration of such funds.

The decree is affirmed with costs.

FEAD, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.